IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED

MAR 1 5 2010

Clerk of Court

| | | |
|---|---|---|
| JORGE GONZALEZ, et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| V. | § | CIVIL NO. B-06-105 |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| COMMERCE, NATIONAL OCEANIC | § | |
| AND ATMOSPHERIC ADMINISTRATION | § | |
| *Defendant.* | § | |

Memorandum Opinion and Order

On June 30, 2006, the Plaintiffs filed their first Complaint in this Court, challenging four

separate but related administrative actions concerning civil penalty assessments and permit

sanctions issued by the United States Department of Commerce, National Oceanic and

Atmospheric Administration ("NOAA" or "the Agency").  (Doc. No. 1.)  On August 11, 2008,

Plaintiffs filed their Second Amended Complaint after the actions had gone through the

administrative process.  (Doc. No. 20.)

On June 24, 2009, this Court issued an Order granting in part and denying in part the

Defendant's Motion to Dismiss.  (Doc. No. 33.)  Specifically, the Court determined that two of

the Agency's actions—the Notices of Violation and Assessment of Administrative Penalty

("NOVA") in cases SE001412FM and SE030369FM—were time-barred, and it therefore

dismissed all claims arising from those NOVAs.  (*Id.* at 15–19.)  The remaining NOVAs,

SE043022FM ("43022") and SE050027FM ("50027"), were not dismissed in the June 24, 2009

Order.  (*Id.* at 20.)

On September 11, 2009, Plaintiffs filed an Opposed Motion for Leave to File Third Amended Complaint. (Doc. No. 34.) As pointed out by the Defendant's Response in Opposition (Doc. No. 36), the proposed Third Amended Complaint continues to assert claims that were previously dismissed by this Court. (*See, e.g.*, Doc. No. 34-1 at ¶ 3.4 (alleging that "[t]he Office of Administrative Law Judge's final action . . . in Case No. SE030369 and . . . in Case No. SE001412FM . . . was incorrect.").)[1] Therefore, on September 29, 2009, the Court granted the Motion for Leave to Amend with the caveat that such leave did not revive the dismissed claims. (Doc. No. 39.) Thus, Plaintiffs' Third Amended Complaint is the live pleading in this case. (Doc. No. 34-1.)

Now pending before the Court are the Plaintiffs' Motion for Summary Judgment (Doc. No. 35) and the Defendant's Motion for Summary Judgment (Doc. No. 42). Having considered the parties' motions, replies, and the administrative record, the Court hereby finds that the Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and the Plaintiffs' Motion for Summary Judgment is also GRANTED IN PART and DENIED IN PART.

For the reasons discussed herein, the only claim for which Plaintiffs are entitled to summary judgment is the claim that the Defendant denied certain "non-violating" corporate Plaintiffs a hearing on the permit sanctions issued against them for other corporations' nonpayment of penalties. The Agency's decisions denying these Plaintiffs a hearing on the permit sanctions are therefore REVERSED, the corresponding sanctions are VACATED, and the

---

[1] The Court acknowledges that some attorneys, fearing that the removal of dismissed claims from an amended complaint might result in a claim of waiver on appeal, may repeatedly include dismissed claims in subsequent versions of their complaint.

matter is REMANDED to the Agency for additional administrative proceedings.

## I.  BACKGROUND[2]

### A.  The Dismissed Claims

With the exception of Plaintiff Gonzalez, all other Plaintiffs are Texas corporations that either now or at one time owned a shrimp trawler and that have as their sole officer/director/shareholder Plaintiff Gonzalez.  Plaintiff Gonzalez is also a resident of Texas. On September 12, 2002, the Agency issued a Notice of Violation and Assessment of Administrative Penalty ("NOVA") against Plaintiff Rio Purificacion, Inc. in Case No. 1412. 1412/30369 AR Ex. 1.[3]  The two-count NOVA charged Rio Purificacion with violating both the Endangered Species Act and the Magnuson-Stevens Fishery Management and Conservation Act (the "Magnuson-Stevens Act") by failing to have installed turtle excluder devices and bycatch reduction devices on its vessel, the F/V RIO CONCHOS.  *Id.* (citing 16 U.S.C. §§ 1538(a)(1)(G), 1857(1)(A) and implementing regulations).  Plaintiff Rio Purificacion was assessed penalties totaling $14,000.  *Id.*  Rio Purificacion did not timely seek a hearing, and this Court therefore found that NOVA 1412 became final agency action thirty days after the respondent (Rio Purificacion) was served with the NOVA, or on December 18, 2002.  (Doc. No. 33 at 16.)  Since Plaintiffs did not timely seek judicial review of NOVA 1412, this Court dismissed all claims arising from NOVA 1412.  (*Id.* at 16–18.)

---

[2] A timeline summarizing the key events is appended to this opinion and order.

[3] The Administrative Record for cases 43022 and 50027 will be referred to as "[Case No.] AR Vol. ___, Ex. ___."  In NOVAs 1412 and 30369, the Administrative Record is combined in one volume, and therefore will be referred to as "1412/30369 AR Ex. ___."

On April 22, 2004, the Agency issued a NOVA against Plaintiff Rio San Marcos, Inc. in Case No. 30369. 1412/30369 AR Ex. 11. This NOVA charged Rio San Marcos with violating the Magnuson-Stevens Act when its vessel, the F/V RIO SAN MARCOS, was found fishing for shrimp in the Gulf Exclusive Economic Zone without a valid permit. *Id.* The penalty assessed was $30,000. *Id.* Rio San Marcos did not seek a hearing within the thirty days provided by agency regulations, and therefore this Court determined that NOVA 30369 became final agency action thirty days after Rio San Marcos was served. (Doc. No. 33 at 19.) Plaintiffs did not seek timely judicial review of NOVA 30369, and therefore this Court dismissed all claims arising from NOVA 30369 as well. (*Id.* at 19.)

B. NOVA 50027

On March 22, 2005, the Agency issued a NOVA against Plaintiff Gonzalez Fisheries, Inc. in Case No. 50027. 50027 AR Vol. 1, Ex. 1. According to the NOVA, Gonzalez Fisheries violated the Magnuson-Stevens Act because its vessel, the F/V AZTECA, was found to be fishing for shrimp in the Gulf Exclusive Economic Zone without a valid permit. *Id.* The NOVA also noted that 1,354 pounds of shrimp from the AZTECA had been seized and sold for $5,912.65. *Id.* The Agency also assessed a civil penalty of $30,000 for the violation. *Id.* On May 2, 2005, Gonzalez Fisheries submitted a timely request for a hearing. 50027 AR Vol. 1, Ex. 1; 15 C.F.R. § 904.102(a). Such request was processed, and the hearing ultimately took place before a U.S. Coast Guard Administrative Law Judge on March 21, 2006 in Ft. Myers, Florida. 50027 AR Vol. 4, Ex. 43. On December 4, 2006, the Administrative Law Judge issued a decision finding that Gonzalez Fisheries was liable for the shrimp fishing permit violation, under the doctrine of respondeat superior; that service of the NOVA upon Gonzalez Fisheries had been

proper; that the $30,000 civil penalty assessed by the Agency was within the guidelines and appropriate; and that Gonzalez Fisheries had the ability to pay the penalty.  50027 AR Vol. 4, Ex. 38 at 14.

Prior to the hearing, Gonzalez Fisheries indicated in its Preliminary Positions on Issues and Procedures that it would be challenging the amount of the penalty assessed due to its inability to pay the full amount of the penalty.  50027 AR Vol. 1, Ex. 7 at 7.  In support of its claim, Gonzalez Fisheries attached copies of tax returns for the company and for Mr. Gonzalez, the corporation's registered agent.  50027 AR Vol. 1, Ex. 7 Attachment.  The Agency then made written requests for additional financial information, including tax returns from Mr. Gonzalez's other businesses and certain financial disclosure forms, from Gonzalez Fisheries' counsel.  50027 AR Vol. 1, Ex. 9 at 2–3; Ex. 10 at 4–5.

Since counsel for Gonzalez Fisheries did not provide the complete information sought, the Agency filed a Motion to Compel Production or Exclude Evidence/Testimony regarding the corporation's ability to pay.  50027 AR Vol. 1, Ex. 9.  On November 30, 2005, the Administrative Law Judge granted the Agency's Motion based on consideration of the applicable legislative history, case law, and regulations. 50027 AR Vol. 1, Ex. 12.  Specifically, the Administrative Law Judge found that "if the Respondent wants his ability to pay to be considered, he must present verifiable financial information to Agency counsel to the extent that Agency counsel determines is adequate to evaluate Respondent's financial condition."  *Id.* at 5 (relying on 15 C.F.R. § 904.108).  Further, the Administrative Law Judge determined that "since the Administrative Law Judge has no authority to rule on whether the financial information presented to Agency counsel is adequate," there was no need for the Administrative Law Judge

5

to "memorialize" the income tax statements that Gonzalez Fisheries had submitted. *Id.* at 6. Ultimately, Gonzalez Fisheries did not submit "verifiable financial information in accordance with 15 C.F.R. § 904.108(c) and [the Administrative Law Judge's] Order of November 30, 2005" and the Administrative Law Judge therefore determined that Gonzalez Fisheries did have the ability to pay the $30,000 penalty.  50027 AR Vol. 4, Ex. 38 at 14.

On January 4, 2007, Gonzalez Fisheries submitted a Petition for Discretionary Review to the Agency Administrator.  50027 AR Vol. 4, Ex. 39.  On May 1, 2007, the Administrator denied the Petition, determining that "the ALJ's decision is supported by substantial evidence in the record, and no error of law occurred."  50027 AR Vol. 4, Ex. 42.  In its June 24, 2009 Order, this Court noted that Plaintiffs had "exhausted their administrative remedies and timely filed for review" and therefore considered Plaintiffs' request for judicial review of Case No. 50027 properly filed and within its jurisdiction.  (Doc. No. 33 at 19–20.)

### C.  NOVA 43022

On June 24, 2005, the Agency issued a NOVA against Plaintiff Rio San Marcos, Inc. in Case No. 43022.  43022 AR Vol. 1, Ex. 1.  According to the NOVA, Rio San Marcos violated the Magnuson-Stevens Act because its vessel, the F/V RIO SAN MARCOS, was found to be fishing for shrimp in the Gulf Exclusive Economic Zone without a valid permit.  *Id.*  The Agency assessed a civil penalty of $30,000 for the violation.  *Id.*  On July 7, 2005, Rio San Marcos submitted a timely request for a hearing.  43022 AR Vol. 1, Ex. 1; 15 C.F.R. § 904.102(a).  Such request was processed, and the hearing ultimately took place before a U.S. Coast Guard Administrative Law Judge on August 22, 2006 in Brownsville, Texas.  43022 AR Vol. 2, Ex. 35. On February 12, 2008, the Administrative Law Judge issued a decision finding that Rio San

Marcos was liable for its vessel's shrimp fishing permit violations of the Magnuson-Stevens Act under the doctrine of respondeat superior; that the $30,000 penalty assessed was appropriate; and that Rio San Marcos had not submitted "adequate verifiable financial information" and was "therefore presumed by law to have the ability to pay" the civil penalty.  43022 AR Vol. 1, Ex. 29 at 12.

In this NOVA, too, the Respondent (Rio San Marcos) submitted notice in its Preliminary Position on Issues and Procedures that it planned to contest the amount of the penalty proposed by the Agency due to its inability to pay.  43022 AR Vol. 1, Ex. 4 at 9.  In support of its claim, Rio San Marcos submitted its own and its registered agent's tax returns for several years.  *See* Attachment to 43022 AR Vol. 1, Ex. 4.  The Agency in its Preliminary Position on Issues and Procedures contested Rio San Marcos's submissions regarding the ability to pay and argued that Rio San Marcos had not submitted full financial disclosures and had therefore not met its burden of proof.  43022 AR Vol. 1, Ex. 3.  On May 4, 2006, based on the arguments made in the Agency's Preliminary Position on Issues and Procedures, the Administrative Law Judge issued an Order to Compel Discovery or Exclude Evidence.  43022 AR Vol. 1, Ex. 7.  In its Order, the Administrative Law Judge ordered Rio San Marcos to file the financial information that Agency counsel would need to evaluate Rio San Marcos's financial condition at least 30 days before the first hearing date.  *Id.*  If Rio San Marcos failed to comply, the Administrative Law Judge determined that the inability to pay would not be considered.  *Id.*

On July 21, 2006, Rio San Marcos submitted its First Supplemental Preliminary Position on Issues and Procedures along with its exhibit list in preparation for the hearing.  43022 AR Vol. 1, Ex. 14.  In its filing, Rio San Marcos objected to the May 4, 2006 Order but it did not

7

submit the additional financial information requested by the Agency counsel. *Id.* Instead, Rio San Marcos maintained that its exhibits would be "adequate financial information for NOAA counsel to evaluate Respondent's financial condition." *Id.* On August 4, 2006, the Agency filed its Second Supplemental Preliminary Position on Issues and Procedures, noting that Rio San Marcos had "not provided to the Agency all information previously requested" and continuing its objection to "any attempt by the Respondent to introduce financial information at the hearing." 43022 AR Vol. 1, Ex. 17.

On August 16, 2006, the Administrative Law Judge issued another Order to Compel Discovery or Exclude Evidence. 43022 AR Vol. 1, Ex. 18. It ruled that "notwithstanding [Rio San Marcos] counsel's articulate and numerous arguments, the Administrative Law Judge must follow the law, statutes and the regulations." *Id.* at 9. Therefore, it concluded again that Rio San Marcos would have to submit "such verifiable financial information as Agency counsel determines is adequate to evaluate Respondent's financial condition" and that if it failed to do so, then "Respondent's inability to pay will not be considered by NOAA or by the Administrative Law Judge at the hearing and in the resulting Decision and Order by the Administrative Law Judge and Respondent will be presumed to have the ability to pay." *Id.* at 12. Plaintiff Rio San Marcos never did submit the complete financial information requested by Agency counsel, and therefore in its initial decision, the Administrative Law Judge decided that it was presumed by law to have the ability to pay the assessed civil penalty. 43022 AR Vol. 1, Ex. 29 at 12.

On March 13, 2008, Rio San Marcos submitted a Petition for Discretionary Review. 43022 AR Vol. 2, Ex. 31. On July 10, 2008, the Agency's Administrator denied the petition "because Respondent's petition has not demonstrated the ALJ's decision contained significant

8

factual or legal errors warranting further review by the Administrator." 43022 AR Vol. 2, Ex. 34. Like in NOVA 50027, this Court determined that Plaintiffs had properly exhausted their administrative remedies and timely filed their request for judicial review in NOVA 43022. (Doc. No. 33 at 19–20.)

D. The NOPS/NIDPs

Along with their allegations regarding the Agency's actions related to the NOVAs, Plaintiffs also contest the issuances of two separate "Notice[s] of Permit Sanctions and/or Notice of Intent to Deny Permit" ("NOPS/NIDP"). (*See* Doc. No. 34-2 at ¶¶ 2.0, 3.2–3.3.) The first of these was issued on August 1, 2003 and addressed to all of the corporate plaintiffs: Rio Purificacion, Inc.; Leon Trawlers, Inc.; Ojos Negros, Inc.; El Grande Trawlers, Inc.; El Colonel, Inc.; Rio San Marcos, Inc.; Gonzalez Fisheries, Inc.; Chubasco, Inc.; and Ocho Hijos, Inc. (Doc. No. 1, Ex. B.) According to the NOPS/NIDP, all of the "federal fisheries/dealer permits issued to and/or applied for" by the corporate plaintiffs would be suspended thirty days from the receipt of the NOPS/NIDP for failure to pay a civil penalty assessed against Plaintiff Rio Purificacion, Inc. (*Id.* (citing 16 U.S.C.§ 1858(g); 15 C.F.R. §§ 904.301, 904.302, 904.310).) The NOPS/NIDP also referenced NOVA 1412 and the $14,000 penalty that Rio Purificacion, Inc. had not paid as of the date of the NOPS/NIDP. (*Id.*) Citing to federal regulations, the NOPS/NIDP further stated that the recipients of the NOPS/NIDP "do not have a right to a hearing to contest this permit sanction." (*Id.* (citing 15 C.F.R. § 904.304(b)).)

The second NOPS/NIDP was issued on October 25, 2005 and also addressed to all of the corporate plaintiffs. (Doc. No. 1, Ex. D.) It is identical in content, except that it refers to NOVA 30369 and the $30,000 civil penalty assessed against Rio San Marcos, Inc. (*Id.*) Otherwise, it

9

provides notice of the same permit sanctions or suspensions, cites to the same statutes and regulations as the first NOPS/NIDP, and also contains the statement that the recipients "do not have a right to a hearing to contest this permit sanction." (*Id.* (citing 16 U.S.C.§ 1858(g); 15 C.F.R. §§ 904.301, 904.302, 904.310, 904.304(b)).)

On May 10, 2006, counsel for the Plaintiffs which were Respondents in Case Nos. 50027, 43022, 30369, and 1412 filed a Respondents' Request for Reconsideration; For New Trial (Hearing Request); And Response In Opposition To Agency's Motion In Opposition to Hearing Request.  50027 AR Vol. 2, Ex. 27; *see also* 1412/30369 AR Ex. 7 (same document); 43022 AR Vol. 1, Ex. 8 (same document).  In this filing, among other requests, Plaintiffs Rio San Marcos, Rio Purificacion, and Gonzalez Fisheries asked that a hearing be held on the NOPS/NIDPs. 50027 AR Vol. 2, Ex. 27 at 10, 15, 26–27.  The Agency filed a response in opposition to the Request, in which it discussed how the Magnuson-Stevens Act provides for hearings on facts underlying penalties so long as they are timely requested, but that hearings on permit sanctions for failure to pay a final penalty are not available where a respondent has simply squandered his opportunity for a hearing on the underlying penalty.  50027 AR Vol. 2, Ex. 32; *see also* 1412/30369 AR Ex. 8 (same document); 43022 AR Vol. 1, Ex. 9 (same document).  On May 31, 2006, an Administrative Law Judge from the Agency denied the Respondents' Request.  50027 AR Vol. 2, Ex. 34; *see also* 1412/30369 AR Ex. 9 (same document); 43022 AR Vol. 1, Ex. 10 (same document).  In its Order, the Administrative Law Judge explained that the Respondents "had a previous opportunity to participate as a party in the an administrative hearing (on the underlying NOVAs [1412 and 30369])" and therefore did not have a right to hearings on the NOPS/NIDPs.  50027 AR Vol. 2, Ex. 34 at 9 (citing 15 C.F.R. § 904.304(b)).

10

In Plaintiffs' Response to Defendant's Motion for Summary Judgment and Reply in Support of their own Motion for Summary Judgment, they assert that "there still is confusion even after" this Court's June 24, 2009 Order because the Plaintiffs "understand the 'claims arising from the NOVAs in SE001412 and SE030369' would be the NOVA's and just that." (Doc. No. 43 at ¶ 4.1.) This "confusion" apparently stems from the fact that the NOPS/NIDPs were addressed to all of the corporate plaintiffs rather than solely to the plaintiffs that were assessed penalties in NOVAs 1412 and 30369. (*Id.* at ¶¶ 4.1, 4.4) Plaintiffs therefore continue to assert that the Agency's issuance of the NOPS/NIDPs should be reviewed by this Court. (*Id.* at ¶ 4.4.)

## II. PLAINTIFFS' CLAIMS FOR RELIEF

The essential factual and legal conclusions that the Plaintiffs challenge are: (1) that they were untimely in seeking hearings regarding NOVAs 1412 and 30369; (2) that they did not have a right to a hearing on the NOPS/NIDPs; (3) the propriety of the Agency's issuance of the NOPS/NIDPs to all Plaintiff corporations based on the nonpayment of two individual corporations; and (4) the Administrative Law Judge determinations in NOVA cases 50027 and 43022 to deny the admission of certain income tax returns, and related determinations that the Respondent-Plaintiffs in NOVAs 50027 and 43022 had the ability to pay the fines that they were assessed.

Plaintiffs' Third Amended Complaint seeks judicial review of the Agency's actions related to all four of the NOVAs. They also assert a myriad of constitutional challenges centered on the factual and legal disputes listed above. Plaintiffs' legal claims are grouped and

11

summarized as follows for convenience:

A.  Administrative Review Claims – Plaintiffs seek judicial review of the following

actions and findings by the Administrative Law Judges and the Agency:

    1.  Civil Penalty Assessments (Doc. No. 34-2 at ¶ 3.0, 3.25–3.26)

    2.  Permit Sanctions (*id.* at ¶¶ 3.0, 3.4, 3.5, 3.25–3.26)

    3.  Denial of Hearings with respect to NOVAs 1412 and 30369 (*id.* at ¶¶ 3.1–3.2, 3.6)

    4.  Denial of Hearings with respect to permit sanctions (*id.* at ¶¶ 3.3–3.4)

    5.  Finding that Respondents in NOVAs 1412 and 30369 were untimely in their request for hearings, because the Agency "interchangeably" used the different case numbers, caused some delays on its own, and issued "permit sanctions" after the administrative review deadline (*id.* at ¶ 3.7–3.9, 3.12–3.15, 3.22)

    6.  Finding that service was properly made (*id.* at ¶ 3.11, 3.17)

    7.  Finding that the requests for Hearings by one plaintiff apply to all corporate plaintiffs (*id.* at ¶ 3.16)

    8.  Hearings that reviewed penalties, but did not review permit sanctions or shrimp seizures (*id.* at ¶ 3.23)

    9.  Administrative law judge determinations that "restricted proof" and "blindly affirmed" the penalty assessments (*id.* at ¶ 3.24)

    10.  Finding that Agency proved by a preponderance of the credible evidence that each plaintiff was personally in violation of the Magnuson-Stevens Act (*id.* at ¶ 5.3(q))

    11.  Imposing permit sanctions allegedly without taking into account the mandatory factors of 16 U.S.C. § 1858(g)(2) (*id.* at ¶ 5.3(t))

    12.  Rejection of the permit applications from some Plaintiffs as pretextual (*id.* at ¶ 5.3(y))

    13.  Failure to process permit applications and issue permits (*id.* at ¶ 5.3(dd))

B.  Constitutional Claims

1.  Fifth Amendment

a.  Due Process

i.  Plaintiffs contest the constitutionality of the agency's issuing and enforcing permit sanctions for separate and distinct potential permit holders based on one Plaintiff corporation's alleged non-payment of a penalty assessment (*id.* at ¶¶ 3.21, 5.0, 5.3(b), 5.3(i), 5.3(w), 5.3(x))

ii.  Plaintiffs contest the constitutionality of imposing fines on and denying permits to Respondents when service was not effectively made upon them (i.e., for NOVAs 1412 and 30369) (*id.* at ¶ 3.11 5.3(f))

iii.  Plaintiffs contend that 15 C.F.R. § 904.304(b) (denying a hearing on a permit sanction when there was an opportunity to have a hearing on the underlying facts) conflicts with 16 U.S.C. § 1858(g)(5), which provides that no permit sanctions shall be imposed "unless there has been a prior opportunity for a hearing on the facts underlying the violation for which the sanction is imposed" (*id.* at ¶ 5.1)

iv. Plaintiffs contend that the agency has unconstitutionally deprived them of the right to work (*id.* at ¶ 5.3(l))

v.  Plaintiffs contend that the discretion of only one person to impose penalties and permit sanctions (in this case, agency lawyer Karen Raines) is arbitrary and capricious (*id.* at ¶ 5.3(n))

vi.  Plaintiffs contend that 16 U.S.C. §1857(1)(A) and 50 C.F.R § 622.7(a) unconstitutionally allow for liability of a corporation owning a shrimping boat for the actions of a boat captain not under the corporation's "control" (*id.* at ¶¶ 5.3(a), (m))

vii.  Plaintiffs contend that the statute allowing for a $30,000 fine is vague and overbroad (*id.* at ¶ 5.3(d))

viii.  Plaintiffs contend that the regulation placing the burden to show ability to pay a fine on the respondent is unconstitutional (*id.*

at ¶ 5.3(o))

ix.  Plaintiffs contend that the agency unconstitutionally failed to consider the evidence they submitted concerning their ability to pay and that Plaintiffs were unconstitutionally denied the opportunity to present such evidence (*id.* at ¶ 5.2, 5.3(p), 5.3(r))

x.  Plaintiffs contend that they should have been able to contest the penalty assessments, shrimp seizures, and permit sanctions because the permits are property interests and the permit sanctions amount to liberty deprivations  (*id.* at ¶¶ 3.20, 5.3(z))

xi.  Plaintiffs broadly contest the imposition of permit sanctions because they dispute the validity of the procedural and substantive action underlying the permit sanction process (*id.* at ¶ 5.3(h))

xii.  Plaintiffs contest the imposition of the NOPS without providing a hearing or other review as a violation of due process and 16 U.S.C. § 1858(g)(5)  (*id.* at ¶¶ 5.3(k), (s), (v), (bb)

xiii.  Plaintiffs contend that the Agency's failure to process permit applications of March 31, 2003 violated due process (*id.* at ¶ 5.3(cc))

b.  Equal Protection

i.  Plaintiffs contend that Mr. Gonzalez's various corporations have not been treated equally, i.e., corporations not owing money to the agency are being denied shrimping permits because of money owed by other distinct corporations (*id.* at ¶ 8.0(a), (c))

ii.  Plaintiffs contend that equal protection has been denied them because the agency has rejected Plaintiffs' offers of "reasonable compromises" (*id.* at ¶ 8.0(b))

c.  Fifth Amendment Taking of Private Property

i.  Plaintiffs raise the issue of their "right to work" in the context of a claim for an unlawful taking (*id.* at ¶ 10.0(a))

ii.  Plaintiffs raise the issue of depriving corporations of shrimping permits for the unpaid fines of other distinct corporations in the context of a claim for an unlawful taking (*id.* at ¶ 10.0(b))

14

iii.  Plaintiffs raise the issue of not being issued permits in the context of a claim for an unlawful taking (*id.* at ¶ 10.0(c))

d.  Double Jeopardy

Plaintiffs claim that the agency's issuing of both a NOVA fine and a permit denial for the same alleged violation constitutes double jeopardy (*id.* at ¶¶ 5.3(c), 5.3(j))

2.  Sixth Amendment/Seventh Amendment[4]

a.  Plaintiffs contend that the unavailability of a jury trial of alleged violations of agency regulations (i.e., the NOVAs) violates their right to a jury trial (*id.* at ¶ 13.0(a))

b.  Plaintiffs contend that the unavailability of a jury trial concerning the permit sanctions (i.e., the NIDPs) also violates their right to a jury trial (*id.* at ¶ 13.0(b))

3.  Eighth Amendment

a.  Plaintiffs again raise the issue of denying permits to corporations for the actions of other distinct corporations, alleging that such action constitutes cruel and unusual punishment (*id.* at ¶ 9.0(a))

b.  Plaintiffs contend that the permit sanctions themselves constitute cruel and unusual punishment (*id.* at ¶ 9.0(b))

c.  Plaintiffs contend that the $30,000 fines imposed for the NOVAs constitute cruel and unusual punishment (*id.* at ¶ 9.0(c))

4.  Separation of Powers

a.  Plaintiffs contend that to the extent that one person (in this case, Karen Raines) has the discretion to issue the initial permit sanctions, absent any judicial review, this violates the separation of powers between the executive and the judicial branches, making 16 U.S.C. § 1858 of the Magnuson-Stevens Fishery and Conservation Management Act unconstitutional (*id.* at ¶ 12.0(a))

_____

[4] Plaintiffs have labeled these as Sixth Amendment claims, but the Court considers them as Seventh Amendment claims because the Sixth Amendment right to a jury trial applies in the context of criminal proceedings, and these are civil proceedings.

b.  Plaintiffs raise the issue of depriving corporations of shrimping permits for the unpaid fines of other distinct corporations, claiming such action violates the separation of powers, as well as the Supremacy Clause (*id.* at ¶ 12.0(b))

## B.  Other Claims

### 1.  Tortious Interference

Plaintiffs contend that the agency is tortiously interfering with Plaintiffs' business relations because prospective buyers of Plaintiffs' boats are scared away due to the permit sanctions, which attach to vessels regardless of ownership (*id.* at ¶ 14.0)

### 2.  Compensable/Civil Rights Claim

Plaintiffs contend that the Agency's action was "arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with the law," that it resulted in violations of their rights to apply for permits, have permits, and have the permits "properly processed," and seek as a remedy the return of their permits and lost shrimping revenues (*id.* at ¶ 15.0)

### 3.  Civil Rights Claims

Plaintiffs contend that the permit sanctions were arbitrary and capricious state action "tantamount to discriminatory denials" (*id.* at ¶ 16.0)

## III.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, Plaintiffs seek summary judgment on the claims relating to the NOVAs this Court did not previously dismiss.[5]  (Doc. No. 35.)  Plaintiffs again focus on the issues of whether they were entitled to hearings pursuant to the Magnuson-Stevens Act; whether certain tax returns should have been considered as relevant to their ability to pay in NOVAs 50027 and 43022; and whether the issuance of the NOPS/NIDPs, without a finding that

---

[5] As noted above, this Court previously dismissed all claims arising from NOVAs 1412 and 30369.  (Doc. No. 33.)

16

the corporate veil should be pierced, was appropriate given the separate corporate personalities of

the nine corporate plaintiffs. (Doc. No. 35 at 1–10.) They further reassert the constitutional

claims that the permit sanctions imposed by the Agency constitute a taking; that the penalty

assessments, shrimp seizure, and permit sanctions violated the Eighth Amendment; that an

unconstitutional violation of Separation of Powers occurred because the Agency allegedly made

judicial determinations without judicial review; and that the Agency's proceedings were

unconstitutional because they allegedly lacked objectivity. (*Id.* at 10–16.) In support of their

argument that the penalty assessments were an abuse of discretion, they argue "there was no

rational relationship between the violations and monetary penalties, considering the financial

statements of the plaintiffs." (*Id.* at 16.) Finally, Plaintiffs also reassert the argument that their

property rights—their claims to the shrimping permits—were adversely affected because of the

NOPS/NIDPs, which Plaintiffs contend were arbitrary and capricious. (*Id.* at 17–20.)


## IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Agency seeks summary judgment against the Plaintiffs on all of the Plaintiffs'

alleged claims. (Doc. No. 42.) It argues that this Court lacks jurisdiction over the claims related

to the NOPS/NIDPs because they are unripe, time-barred, and exempt from judicial review,

and/or because Plaintiffs were not entitled to administrative hearings regarding the

NOPS/NIDPs. (*Id.* at 13–22.) With respect to the decisions of the Administrative Law Judges in

NOVAs 50027 and 43022, the Agency argues that consideration of a sister corporation's

violation history was appropriate and did not require a finding of piercing the corporate veil; that

the evidence concerning ability to pay was properly excluded based on the governing statutes and

regulations; and that the decisions to not consider the constitutionality challenges and seizure claims were appropriate. (*Id.* at 22–40.) Finally, the Agency argues that this Court does not have subject matter jurisdiction with respect to the Plaintiffs' takings claims, and that Plaintiffs have failed to state claims concerning their double jeopardy and separation of powers claims. (*Id.* at 40–42.)

A. The NOPS/NIDPs

The Agency argues that Plaintiffs have failed to state a claim for relief regarding the NOPS/NIDPs. According to the Agency, the Plaintiffs have not submitted completed permit applications.  (Doc. No. 42 at 14.) Five of the Plaintiffs' applications—for the F/V EL MISTER (El Colonel, Inc.), F/V EL GRANDE (El Grande Trawlers, Inc.), F/V LEON (Leon Trawlers, Inc.), F/V MARIA BONITA (Ojos Negros, Inc.), and F/V RIO SAN MARCOS (Rio San Marcos, Inc.)—were all returned because the applications did not include the date of birth of the corporate shareholder or the annual business report. (*Id.*)  Additionally, the Agency asserts that four of the Plaintiffs did not even submit applications—it never received applications for the F/V Chubasco (Chubasco, Inc.), F/V AZTECA (Gonzalez Fisheries, Inc.), F/V CONQUISTADOR (Ocho Hijos, Inc.), or F/V RIO CONCHOS (Rio Purificacion, Inc.). (*Id.* at 14–15.)  The applications that the Agency had returned were never resubmitted, and because they were still incomplete, they were deemed abandoned. (*Id.* at 15.)  Therefore, the Agency argues that the Plaintiffs' applications were never rejected and therefore the Plaintiffs' claims related to permit sanctions are not yet ripe because the Agency has not yet rendered a final decision on the permit applications. (*Id.* at 16.)

Even if the Court were to consider that the Agency's return of the incomplete permit

18

applications constituted final action ripe for review, the Agency argues that Plaintiffs' claims of malfeasance for failure to properly process the applications are time-barred. (*Id.* at 16–17.) Assuming *arguendo* that the return of the permits were to constitute a final denial of the permits, Plaintiffs would have had to challenge such action within 30 days. (*Id.* at 17–18 (citing 16 U.S.C. § 1855(f)(1)(B)).) Those applications were returned on April 11, 2003, and no application for judicial review was sought until June 30, 2006. Therefore, the Agency contends that Plaintiffs' claims regarding Agency action on the permit applications are time-barred.

With respect to the NOPS/NIDPs, the Agency reasserts its position that the NOPS/NIDPs were not final agency action because Plaintiffs never submitted complete permit applications. (*Id.* at 18.) Even if they were construed as final agency actions, however, they are barred from judicial review by statute. (*Id.* at 19 (citing 16 U.S.C. § 1858(b) (barring district court review of permit suspensions resulting from nonpayment of penalty or fine)).)

Finally, the Agency posits that the Plaintiffs were not entitled to administrative hearings on the NOPS/NIDPs because the Agency's regulations do not provide as such. (*Id.* at 19.) Specifically, the regulations allow for permit suspension if a permit holder has failed to pay a civil penalty. (*Id.* (citing 15 C.F.R. § 904.310(a)(1)).) Additionally, there is no opportunity for a hearing if the permit holder being sanctioned or whose permit is being suspended had a previous opportunity to participate as a party in a proceeding, regardless of whether the permit holder actually took advantage of the opportunity, and also regardless of whether or not a hearing was actually held. (*Id.* at 19–20 (citing 15 C.F.R. § 904.304(b)).) Since Mr. Gonzalez would have had an opportunity for a hearing on the underlying violations in NOVAs 1412 and 30369, the Agency concludes that no hearing was necessary in the NOPS/NIDPs issued under those case

numbers.  (*Id.* at 20.)

> ### B.  The ALJ Decisions in NOVAs 50037 and 43022

The Agency maintains that the Administrative Law Judges' determinations were supported by the evidence after sufficient administrative hearings.  With respect to the "imputation" allegation—that the Agency improperly considered the violations of sister corporations—the Agency explains that such practice is based on long-standing enforcement policies.  (Doc. No. 42 at 23.)  In support, the Agency directs the Court to its civil penalty schedule, which explicitly provides that the Agency may impute, for the purposes of the penalty schedule, violations involving a vessel that is owned or controlled by the same person who controls the vessel in question.  (*Id.* (citing 50027 AR Vol. 5-44, Ex. 49 at ii (Magnuson-Stevens Act Penalty Schedule revised 6/13/2003); 43022 AR Vol. 3-36, Ex. 10 at ii (same document)).) The Agency also discusses a legal opinion letter in support of its contention that consideration of the violation history of sister corporations may have bearing on the factors relevant to the ultimate determination of a civil penalty, such as "degree of culpability" and "other matters as justice may require," and is thus within the discretion and authority of the Agency.  (*Id.* at 24–27 (citing July 2, 2004 Letter from NOAA Office of Assistant General Counsel for Enforcement & Litigation to Rep. Barney Frank, Doc. No. 42-5).)  Given the relevancy of the prior offenses of sister corporations, the Agency contends that considering them did not amount to piercing the corporate veil.  (*Id.* at 27.)

Moreover, even if it were necessary to make a determination regarding piercing the corporate veil, the Agency submits that the facts support a finding that the corporate veil should be pierced in this case.  (*Id.* at 27–33.)  Relying on facts in the administrative record, the Agency

20

argues that Mr. Gonzalez's authority, ownership, knowledge, and share of the proceeds from shrimp harvested by the Plaintiff corporations' vessels are sufficient to support a finding that the corporate veil should be pierced. (*Id.*) If this Court were not able to make such a finding based on the facts, the Agency argues that the case must be remanded to the Agency for development of the record and a determination by the Administrative Law Judge. (*Id.* at 44.)

With respect to the ability to pay arguments, the Agency argues that the Administrative Law Judges properly excluded the evidence submitted by Plaintiffs concerning their ability to pay. (*Id.* at 33–38.) Under the regulations implementing the Magnuson-Stevens Act, respondents bear the burden of proving inability to pay, and to do so they must submit "verifiable, complete, and accurate financial information" to the Agency. (*Id.* at 33 (citing 15 C.F.R. § 904.108(c)).) If a respondent does not submit the appropriate information, the respondent will be presumed to have the ability to pay the penalty assessed. (*Id.*) In reviewing the Agency's and the Respondent-Plaintiffs' actions in NOVAs 50027 and 43022, the Agency notes that Respondents had "multiple opportunities" to submit the financial information required under federal regulations, but Respondents did not avail themselves of these opportunities and therefore did not comply with the requirements of the federal regulations. (*Id.* at 37) Therefore, exclusion of the tax return data was proper, and the Agency concludes that the Plaintiffs were not denied due process. (*Id.* at 37–38.)

Finally, the Agency argues that the Administrative Law Judges were correct in declining to consider the Plaintiffs' arguments regarding constitutionality and the seizure and sale of shrimp in connection with NOVA 50027. (*Id.* at 38–39.) This is because the Administrative Law Judges have no authority to make rulings on constitutional issues under the relevant federal

21

regulations and because the shrimp seizure claim is not yet ripe. (*Id.*)

### C. This Court's Jurisdiction over the Takings, Eighth Amendment, and Separation of Powers Claims

The Agency contends that this Court has no jurisdiction over the takings claims because they are related to the shrimp seizure and, to the extent that some claims are not, the United States Court of Federal Claims has exclusive jurisdiction over non-tort claims such as these, where the Plaintiffs seek damages against the United States in excess of $10,000. (Doc. No. 42 at 40.) Additionally, because the penalties assessed by the Agency fall within the range authorized by Congress and are not punitive, the Agency argues that Plaintiffs cannot show the penalties to be excessive or punishment within the meaning of the Double Jeopardy Clause. (*Id.* at 40–41.) Finally, the Agency urges summary judgment on the separation of powers claims because the administrative review followed by the Agency in Plaintiffs' cases was the very review established by the Agency pursuant to express Congressional "authorization to assess civil penalties and adjudicate challenges thereto." (*Id.* at 42.)


## V.  CONTESTED ISSUES IN THE REPLY MEMORANDA

In their replies, the Plaintiffs and Agency continue to contest two main issues.  First, Plaintiffs and the Agency disagree with respect to the hearing requirements under the Magnuson-Stevens Act.  Plaintiffs contend that they are entitled to hearings on the permit sanctions (NOPS/NIDPs) and shrimp seizures.  (Doc. No. 43 at ¶ 2.4.)  The Agency maintains that the specific hearings requested by the Plaintiffs are not required under federal regulations.  (Doc. No. 44 at 11–12.)  Second, the Plaintiffs and Agency disagree with respect to the Plaintiffs'

possession of federal shrimping permits.  The Plaintiffs state "all nine (9) corporate plaintiffs had held federal shrimp permits for many years since each respective shrimp vessel of such plaintiff began fishing for many years with the federal shrimp permits."  (Doc. No. 43 at ¶ 3.1.)  In support of their statement that the Plaintiff corporations also submitted applications for permits, the Plaintiffs attach copies of the alleged applications and the affidavit of Raul Garcia, who attests that "as far as [he] recall[s]," the copies of the applications would have been signed and submitted with the required fees.  (Doc. No. 43, Ex. A at ¶ 3.)  The Agency, however, contends that only five original applications were received, but that these were returned as incomplete and Plaintiffs never held any federal shrimping permits.  (Doc. No. 44 at 1–2.)  It relies on the affidavit of "legal instruments examiner specialist Cheryl Franzen," who performed searches on all of the Plaintiff corporations' vessels and submitted the results in sworn affidavits that were offered into evidence "at two different times."  (Doc. No. 44 at 4–5 (citing 43022 AR Vol. 3-36, Exhs. 8 and 59; 43022 AR Vol. 2-35 (Transcript) at 14–17, 223-225).)

On February 11, 2010, this Court issued an Order that the Plaintiffs clear up this second matter by submitting copies of any and all federal shrimping permits previously held by the Plaintiff corporations' vessels, or, if such permits were no longer available, sworn affidavits from individuals who received the permits and who knew the reasons why the permits are no longer available.  (Doc. No. 46.)  Copies of the permits and/or affidavits were ordered to be filed by February 26, 2010.  (*Id.*)  As of the writing of this opinion and order, the Plaintiffs have not filed any of the documents requested, and therefore the Court presumes that the Defendant is correct in stating that none of the Plaintiffs' vessels ever possessed valid federal shrimping permits.  (*Id.*)

23

## VI.  LEGAL STANDARDS GOVERNING REVIEW

### A. Administrative Review

In cases as this one, where Plaintiffs seek judicial review of a civil penalty under the Magnuson-Stevens Act, "[t]he findings and order of the Secretary shall be set aside by [the district] court if they are not found to be supported by substantial evidence, as provided in section 706(2) of title 5." 16 U.S.C. § 1858(b).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 217 (1938); *Greenspan v. Shalala*, 38 F.3d 232, 238 (5th Cir. 1994).  "It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  In reviewing the factual findings, the Court considers the entire record "upon which such violation was found or such penalty imposed." 16 U.S.C. § 1858(b). Questions of law and constitutional interpretation are *de novo*, 5 U.S.C. § 706, but courts owe "substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996) (quoting *Thomas Jefferson Univ.*)).

Other agency actions or sanctions, to the extent they are reviewable, are reviewed for abuse of discretion "where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy." *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 185 (1973).

### B. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The

nonmoving party must go beyond the pleadings and provide specific facts showing that there is a

genuine issue for trial.  *Id.* at 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986);

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A dispute

about a material fact is genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

element essential to that party's case.  *Celotex*, 477 U.S. at 322–23.

The court should not, in the absence of any proof, assume that the nonmoving party could

or would prove the necessary facts.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  The nonmoving party's

burden "is not satisfied simply by creating some metaphysical doubt as to the material facts or by

providing only conclusory allegations, unsubstantiated assertions or merely a scintilla of

evidence." *Id.*  (citations omitted).  A court will resolve factual controversies in favor of the

nonmoving party "only when there is an actual controversy, that is, when both parties have

submitted evidence of contradictory facts." *Id.*  Finally, cross-motions for summary judgment are

each reviewed "independently, viewing the evidence and inferences in the light most favorable to

the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transportation*, 264 F.3d 493, 498 (5th

Cir. 2001).

## VII.  DISCUSSION

Although Plaintiffs have clothed their arguments in numerous claims, the essential issues

that they contest and the corresponding forms of relief they seek fall into four broad categories: (1) whether they were entitled to hearings on the NOPS/NIDPs and NOVAs 1412 and 30369; (2) whether the Agency could issue the NOPS/NIDPs against all of the corporate Plaintiffs without making factual findings that the corporate veil could be pierced; (3) whether their ability to pay should have been considered in the hearings on NOVAs 50027 and 43022, and the resultant civil penalties assessed based on those NOVAs; and (4) whether the Agency generally followed the proper procedures and complied with the Constitution.

### A.  Rights to Hearings and Judicial Review

#### 1.  Hearings on and Judicial Review of NOVAs 1412 and 30369

This Court previously dismissed all claims related to NOVAs 1412 and 30369.  (Doc. No. 33 at 16–19.)  It determined that Plaintiffs were properly served because "Mr. Garcia was an 'other representative' for the purposes of 15 C.F.R. § 904.3(a)."  (*Id.* at 17, 19.)  Plaintiffs were untimely in their requests for hearings and judicial review.  (*Id.* at 18–19.)  Finally, Plaintiffs' arguments regarding estoppel did not plead the elements of estoppel or develop any argument beyond the bare claim that the Agency had taken almost a year to process the Plaintiffs' June 29, 2005 request for hearings on all of the NOVAs.  (*Id.*)  The Court also reminded all parties in its September 29, 2009 Order that these claims had been dismissed.  (Doc. No. 39 at 2.)  Nothing in the Plaintiffs' motion for summary judgment or reply memorandum supports a contrary finding, and therefore all claims related to NOVAs 1412 and 30369 remain dismissed.

#### 2.  Hearings on and Judicial Review of the NOPS/NIDPs: Interpretation of the Magnuson-Stevens Act

The Plaintiffs were denied hearings on the NOPS/NIDPs based on the regulations

implementing the Magnuson-Stevens Act. *See* 43022 AR Vol. 1, Ex. 10 at 7–9 (Decision of

Administrative Law Judge denying hearings); (Doc. No. 1, Exs. B and D (NOPS/NIDPs stating

that the noticed parties would not have a right to a hearing to contest the sanction)(citing 15

C.F.R. § 904.304(b)).)  These regulations provide that:

> There will be no opportunity for a hearing if, with respect to the violation that forms
> the basis for the NOPS or NIDP, the permit holder had a previous opportunity to
> participate as a party in an administrative or judicial proceeding, whether or not the
> permit holder did participate, and whether or not such a hearing was held.  15 C.F.R.
> § 904.304(b)

Under the Magnuson-Stevens Act, "[n]o sanctions shall be imposed . . . unless there has been a

prior opportunity for a hearing on the facts underlying the violation for which the sanction is

imposed, either in conjunction with a civil penalty proceeding under this section or otherwise."

16 U.S.C. § 1858(g)(5).

### a.  Agency's Arguments

In its Motion for Summary Judgment, the Agency makes several arguments in opposition

to Plaintiffs' claims regarding the right to hearings in the NOPS/NIDPs.  First, the Agency argues

that the permits in question were never actually submitted, and therefore the claims regarding

denial of the permits (presumably as a result of the NOPS/NIDPs) are not yet ripe because no

final agency action has occurred.  (Doc. No. 42 at 13–16.)  Second, the Agency contends that

even if any claim regarding the Agency's return of the incomplete permit applications (such as

the argument that the applications were not properly processed) were ripe, the challenge would

be time-barred.  (*Id.* at 17–18 (citing 16 U.S.C. § 1855(f)(1)(B); 5 U.S.C. § 706(2)(A)–(D)).)

Third, the Agency asserts that since the NOPS/NIDPs are "permit suspensions resulting from

nonpayment of a penalty or fine," the Magnuson-Stevens Act bars their review in federal district

court. (*Id.* at 18–19 (citing 16 U.S.C. § 1858(b)).)  Fourth, the Agency reasons that since the

Plaintiff corporations against which the penalties were assessed in NOVAs 1412 (Rio

Purifiacion, Inc.) and 30369 (Rio San Marcos, Inc.) had previous opportunities for hearings in

those NOVAs, but did not make timely requests for hearings, the Plaintiffs are not entitled to

hearings on the NOPS/NIDPs.  43022 AR Vol. 1, Ex. 10 at 9; (Doc. No. 42 at 19–22 (citing 15

C.F.R. § 904.304(b); 15 C.F.R. § 904.2).)

### b.  Plaintiffs' Arguments

Plaintiffs maintain that the Agency action was final based upon the decision of the

Administrative Law Judge in NOVA 50027, which stated that the August 1, 2003 NOPS/NIDP

"is considered a final administrative decision of the Agency."  (Doc. No. 43 at ¶ 6.10 (citing

50027 AR Vol. 4, Ex. 38 at 18).)  Plaintiffs further contend that the regulations cited by the

Agency and the Administrative Law Judge who denied their motion for a hearing are in conflict

with the Magnuson-Stevens Act itself, or else a violation of their constitutional due process

rights.  (Doc. Nos. 35 at 3–4; 43 at ¶¶3.2–3.5, 6.11, 6.13–6.14.)  They also claim that the

Agency's interpretation of the regulation—that is, the term "permit holder" as interpreted to

include Jorge Gonzalez—is "misguided."  (Doc. No. 43 at ¶ 6.12–6.13)

### c.  Finality

The Agency itself has written on the issue of finality—the Initial Decision of the

Administrative Law Judge in NOVA 50027 states that "[t]he NOPS/NIDP was served on the

Respondent [Gonzalez Fisheries, Inc.] and is considered a final administrative decision of the

Agency."  50027 AR Vol. 4, Ex. 38 at 18.  Notwithstanding the Agency's later assertion that the

Administrative Law Judge's statement was mere dicta, (Doc. No. 44 at 9), the Court hereby

determines that the issuances of the NOPS/NIDPs did amount to final agency action. Under

*Bennett v. Spear*, final agency action occurs where the action "marks the consummation of the

agency's decisionmaking process–it must not be of a merely tentative or interlocutory nature"

and where it is "one by which rights or obligations have been determined, or from which legal

consequences will flow." 520 U.S. 154, 177–178 (1997).

The NOPS/NIDPs state that the recipients "do not have a right to a hearing to contest this

permit sanction." Such a statement, with no other indication as to how a recipient might object

to or appeal the permit sanction, indicates that the NOPS/NIDP is neither "tentative" nor of

"interlocutory nature," satisfying the first requirement of *Bennett*. *Id.*, 520 U.S. at 178.

Moreover, even taking as true the Agency's assertion that the Plaintiffs have not applied

for permits or even held a permit, the NOPS/NIDPs each explicitly state that after thirty days, the

Agency "suspends all federal fisheries/dealer permits issued to and/*or applied for*" by the

corporate Plaintiffs. (Doc. No. 1, Exs. B and D (emphasis added).) The message to the Plaintiffs

which have not yet applied for mandatory permits is that there is no way they would ever get a

permit until the civil penalty is paid. For this reason, the factual issue of whether the Plaintiffs

actually applied for a permit is irrelevant to the NOPS/NIDPs hearing claims.

Based on the plain text on the face of the NOPS/NIDPS, the Court finds that they

constitute actual permit sanctions (in the case that the Plaintiffs possessed permits) or preemptive

sanctions (in the case that the Plaintiffs are not yet in possession of permits); either way, the

NOPS/NIDPs impair the Plaintiffs' ability to possess a legally valid permit. Therefore, the

second requirement of *Bennett* is also satisfied, and the NOPS/NIDPs constitute final agency

action subject to review by this Court. *See Bennett*, 520 U.S. at 178.

In addition, Plaintiffs Gonzalez Fisheries, Inc., Rio San Marcos, Inc., and Rio Purificacion, Inc. all filed a request for hearings on the NOPS/NIDPs, and this request was denied by an Administrative Law Judge on May 31, 2006.  *See* 1412/30369 AR Ex. 7 (Request for Hearing); 1412/30369 AR Ex. 9 (Order Denying Request for Hearing).  This decision also qualifies as a final agency determination as to the Plaintiffs' right to a hearing.

### d.  The federal regulations do not conflict with the Magnuson-Stevens Act.

The Plaintiffs have challenged the regulations that the Agency administers and its interpretation of those regulations as in conflict with the statute.  The plain language of the statute unambiguously carves out an exception from the broad class of persons entitled to (a) judicial review of a civil penalty and (b) a hearing in cases where "there has been a prior opportunity for a hearing on the facts underlying the violation for which the sanction is imposed."  *See* 16 U.S.C. §§ 1858(b), (g)(5).  Congress's intent based on the plain language of the statute is to broadly provide for judicial review of and hearings concerning civil penalties, *except* in the instances where a party has already had an opportunity for hearings and judicial review.  The Agency's regulations faithfully carry out this intent, broadly providing the opportunity for a hearing to any recipient of a NOPS or NIDP, *see* 15 C.F.R. § 904.304(a), but carving out an exception where "the permit holder had a previous opportunity to participate as a party in an administrative or judicial proceeding." 15 C.F.R. § 904.304(b).  Therefore, the Court hereby finds that the federal regulations implementing the Magnuson-Stevens Act do not conflict with the Act itself.

### e.  The "violator" Plaintiffs were not entitled to a hearing on the NOPS/NIDPs and are not entitled to judicial review of the NOPS/NIDPs.

Plaintiff Rio Purificacion, Inc. was issued a NOVA on September 12, 2002, but did not seek a hearing on the NOVA until June 29, 2005.  Although the Magnuson-Stevens Act would have provided it with a hearing had it timely requested one, no timely request was filed. *See* 16 U.S.C. § 1858(a); 15 C.F.R. §§ 904.102(a)(3); 904.201.  Therefore, when Rio Purificacion received the August 1, 2003 NOPS/NIDP for failure to pay the civil penalty issued in NOVA 1412, it was not entitled to a hearing because it had a previous opportunity for a hearing on the underlying violation.  16 U.S.C. § 1858(g)(5); 15 C.F.R. § 904.304(b).

Plaintiff Rio San Marcos, Inc. was issued a NOVA on April 22, 2004, but also did not seek a hearing on the NOVA until June 29, 2005.  It, too, had an opportunity for a hearing under the Magnuson-Stevens Act. *See* 16 U.S.C. § 1858(a); 15 C.F.R. §§ 904.102(a)(3); 904.201.  Therefore, when Rio San Marcos received the October 25, 2005 NOPS/NIDP for failure to pay the civil penalty issued in NOVA 30369, it was not entitled to a hearing because it, too, had a previous opportunity for a hearing on the underlying violation.  16 U.S.C. § 1858(g)(5); 15 C.F.R. § 904.304(b).

The statute itself forecloses judicial review of "a permit suspension for nonpayment of a penalty or fine." 16 U.S.C. § 1858(b).  Here, the August 1, 2003 NOPS/NIDP was issued because Plaintiff Rio Purificacion, Inc. failed to pay the civil penalty assessed in NOVA 1412, and the October 25, 2005 NOPS/NIDP was issued because Rio San Marcos, Inc. failed to pay the civil penalty assessed in NOVA 30369.  (Doc. No. 1, Exs. B, D.)  Therefore, this Court is also barred by statute from reviewing the issuance of the NOPS/NIDPs to the "violator" Plaintiffs Rio

31

San Marcos and Rio Purificacion.  16 U.S.C. § 1858(b).

<u>f.  The Agency's decision not to provide a hearing to the non-violating<br>Plaintiffs was a misinterpretation of governing law.</u>

As established above, for Plaintiff Rio Purificacion, Inc. in the August 1, 2003

NOPS/NIDP and Rio San Marcos, Inc. in the October 25, 2005 NOPS/NIDP, the Agency's

denial of the hearings on the NOPS/NIDPs was consistent with the Magnuson-Stevens Act and

federal regulations.  For the remaining corporate Plaintiffs (the "non-violating" Plaintiffs)[6],

---

[6] With respect to the NOPS/NIDP, the Court shall define the "violator" and "non-violating" Plaintiffs as follows:

The "violator" Plaintiffs are defined as those Plaintiffs whose own conduct underlies the NOPS/NIDP issued.  Therefore, for the August 1, 2003 NOPS/NIDP, Rio Purificacion, Inc. is the violator Plaintiff; and for the October 25, 2005 NOPS/NIDP, Rio San Marcos, Inc. is the violator Plaintiff.

The "non-violating" Plaintiffs are defined as those Plaintiffs whose names were listed on the NOPS/NIDP as having their permits or applications suspended, but who did not commit the act(s) underlying the NOPS/NIDP.  For the sake of clarity, the "non-violating" corporate Plaintiffs are: (a) for the August 1, 2003 NOPS/NIDP, Plaintiffs Leon Trawlers, Inc., Ojos Negros, Inc., El Grande Trawlers, Inc., El Colonel, Inc., Chubasco Inc., Ochos Hijos, Inc, Gonzalez Fisheries, Inc., and Rio San Marcos, Inc.; (b) for the October 25, 2005 NOPS/NIDP, Plaintiffs Leon Trawlers, Inc., Ojos Negros, Inc., El Grande Trawlers, Inc., El Colonel, Inc., Chubasco Inc., Ochos Hijos, Inc, Gonzalez Fisheries, Inc., and Rio Purificacion, Inc.
These definitions apply only for the discussion of the NOPS/NIDPs.  Since the definition of a "violator" or "non-violating" Plaintiff turns on whether the Plaintiff's conduct underlies the NOPS/NIDP, it is possible that a Plaintiff may be a "violator" Plaintiff for one NOPS/NIDP, but a "non-violating" Plaintiff in a separate NOPS/NIDP.  For example, Rio Purificacion is a violator Plaintiff for the August 1, 2003 NOPS/NIDP, but it is considered a non-violating Plaintiff for the October 25, 2005 NOPS/NIDP.  The fact that it is considered a non-violating Plaintiff for the latter NOPS/NIDP does not have any bearing on the Agency's determinations that Rio Purificacion in fact violated the Magnuson-Stevens Act in NOVA 1412, such violation was a valid basis for the August 1, 2003 NOPS/NIDP, and Rio Purificacion was not entitled to a hearing on the August 1, 2003 NOPS/NIDP.

These definitions do not affect the NOVAs, which will be reviewed later in this opinion. Gonzalez Fisheries, Inc. in NOVA 50027 and Rio San Marcos, Inc. in NOVA 43022 were determined by the Agency to have violated the Magnuson-Stevens Act.  That they are defined as "non-violating" Plaintiffs for the purposes of one or both NOPS/NIDPs has no bearing on this Court's review of the NOVAs, *infra*.

however, the Court finds that the Agency misinterpreted the statute and regulations by denying them the right to a hearing on the NOPS/NIDPs.

The Magnuson-Stevens Act provides that where "a vessel has been used in the commission of any act prohibited under section 1857 of this title, [or] . . . the owner or operator of a vessel or any other person who has been issued or has applied for a permit under this chapter has acted in violation of section 1857 of this title, . . . the Secretary may—(i) revoke any permit issued with respect to such vessel or person . . .; (iii) deny such permit; or (iv) impose additional conditions and restrictions on any permit issued to or applied for by such vessel or person under this chapter . . . ." 16 U.S.C. § 1858(g)(1).

A "permit holder" is defined by the federal regulations as "the holder of a permit or any agent or employee *of the holder*, and includes the owner and operator of a vessel for which the permit was issued." 15 C.F.R. § 904.2 (emphasis added). The Agency considered Jorge Gonzalez to be a "permit holder" because he was a director, shareholder, or officer in all of the Plaintiff corporations, which would have owned the vessels which required permits. *See* 1412/30369 AR, Ex. 9 at 6. According to the Administrative Law Judge, the NOPS/NIDPs "put all on notice that the civil penalties must be resolved prior to the Agency issuing federal fishery permits to any corporations in which Mr. Gonzalez was a director, shareholder, or officer." *Id.* The corporate Plaintiffs "were listed in the [NOPS/NIDPs] because all were potential permit holders." *Id.* Under the regulations, the failure of one permit holder to pay a penalty may result in the denial or sanctioning of that permit holder's other permits. 15 C.F.R. § 904.301.

The Agency and Administrative Law Judge's decision relies on the federal regulation to

33

find that the non-violating Respondents which requested a hearing were not entitled to one. *See* 1412/30369 AR Ex. 9 at 9 (citing 15 C.F.R. § 904.304(b)). Reasoning that the Respondents had the opportunity to challenge the underlying penalty in a hearing, the Agency contends that none of the Respondents would be permitted to challenge the permit sanction in a new hearing, even the ones that were not responsible for the underlying penalty. *See id.*; 15 C.F.R. § 904.304(b).

The crux of Plaintiffs' argument is that the Agency's actions are based on a definition of "permit holder" that is not the "plain meaning" of that term. (Doc. No. 43 at ¶¶ 6.12–6.13.) Nor is it the definition contained in the regulations. Essentially, the Agency's denial of a hearing to the non-violating corporations must be based on an interpretation that includes the non-violating corporations in the definition of "permit-holder," or else they should have been provided with the right to a hearing to contest the NOPS/NIDPs. (*Id.*;) *see also* 15 C.F.R. § 904.304(a) ("Except as provided in paragraph (b) of this section, the recipient of a NOPS or NIDP will be provided an opportunity for a hearing. . . .").

The interpretation of a statute that an Agency is charged with implementing, and actions taken pursuant to such interpretation, are generally entitled to "considerable weight." *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1994). Here, the statute gives broad discretion to the Secretary in sanctioning a vessel, its owner or operator, or any other person who has violated the Act. *See* 16 U.S.C. § 1858(g)(1). The Agency's action here, however, relies on stretching the regulatory definition of "permit holder" beyond recognition to include a purported sister corporation, and therefore exceeds that breadth. This is because even if Mr. Gonzalez, and not the offending corporation, is considered the "permit holder" for each of the corporate Plaintiffs, it is not the case that each of the corporate Plaintiffs is also a "permit holder" of the other corporate

34

Plaintiffs. That is, Leon Trawlers, Inc. is not the permit holder of Rio San Marcos, Inc. even under the regulation's expansive definition of a permit holder. 15 C.F.R. § 904.2. It is not the owner, agent, or employee of the permit holder. Therefore, Leon Trawlers, Inc. would not have been served with the underlying NOVAs on which the violator Plaintiffs shirked their penalty fines. Leon Trawlers, Inc. would not have been able to contest the underlying NOVAs in a hearing. As such, Leon Trawlers, Inc. and the other non-violating Plaintiffs should not be denied the opportunity to contest the permit sanctions now being imposed on them by the Agency.

In addition, the argument that the statute bars judicial review of the NOPS/NIDPs because they are based on non-payment of a civil penalty, *see* 16 U.S.C. § 1858(b), is likewise meritless as to the non-violating Plaintiffs because they were not actually assessed the underlying civil penalties.

The Court therefore finds that the Agency's decision to deny the non-violating Plaintiffs a hearing to contest the NOPS/NIDPs was not in accordance with federal law, including its own regulations, and should be set aside, with the non-violating Plaintiffs' claims for hearings remanded to the Agency for further proceedings.[7]  16 U.S.C. § 1858(b); 5 U.S.C. § 706(2).

### g. Due Process Was Not Denied to the Violator Plaintiffs.

Since the Court finds that the Agency misinterpreted the federal regulations by denying the non-violating Plaintiffs the right to a hearing, and remands these claims to the Agency, it

---

[7] The Court takes no position on what the ultimate result of that hearing should be. It recognizes that it is possible that the same end result may occur, but an endpoint-only analysis has never been the hallmark of fairness or due process. Nor is the endpoint the hallmark of the existing regulations. Hearings were guaranteed to the non-violating Plaintiffs under the Magnuson-Stevens Act and its implementing regulations, and the Agency may not deny such hearings simply because it would be convenient or the outcome seems readily apparent without a hearing.

need not decide the question of whether the non-violating Plaintiffs were denied due process. For the violator Plaintiffs, however, it finds that they were not denied due process.

Plaintiffs also contend that the denial of a hearing on the NOPS/NIDPs must amount to a constitutional violation of due process, even if the statute is "allowed to be read to not grant hearing." (Doc. No. 43 at ¶ 6.11.) For the violator Plaintiffs, this contention is not supported by any analysis or application to the present facts except to state the rule that notice and a hearing are "prerequisites to due process in civil proceedings." (*Id.*) Here, the violator Plaintiffs were provided with notice and the opportunity for a hearing on NOVAs 1412 and 30369, the underlying civil penalties.

Under the *Mathews v. Eldridge* framework, "the necessary amount and kind of pre-deprivation process depends on an analysis of three factors: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The permit sanctioning procedures set forth by the Magnuson-Stevens Act are in accord with the *Mathews* framework because they only allow sanctions to be imposed after an opportunity for a hearing has been afforded. 16 U.S.C. § 1858(g)(5). Moreover, a balancing of the *Mathews* factors counsels strongly against requiring an additional hearing in instances where a party has already had an opportunity for a hearing. First, the private interest to be affected by

the official action is for a discretionary permit—one to which no person or corporation is entitled by law. Second, there is a low risk of erroneous deprivation because the sanctions that Plaintiffs challenge are imposed only against persons, corporations, or vessels which have already been determined to have violated federal laws. Moreover, there is no additional value to be had in relitigating such violations of the law at a later point in time. Requiring such relitigation would impose significant administrative costs, and could undercut the legitimacy of the initial set of proceedings. The procedures already afforded by the Magnuson-Stevens Act provide ample opportunity for a hearing on the facts that underlie a penalty assessment, and Plaintiffs in this case certainly had notice of their obligations under the law—they received copies of the NOVAs, which directed them to applicable law and explicitly informed them of their right to seek a hearing. That they did not avail themselves of that opportunity is not a sufficient basis to strike down the federal laws that impose consequences to Plaintiffs' delinquency in paying their civil penalties.

The Court therefore finds that the Agency is entitled to summary judgment on the question of whether the denial of a hearing on the NOPS/NIDPs to the violator Plaintiffs violates due process.

### h. Equal Protection

In order to establish a claim for an equal protection violation, a plaintiff "must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Plaintiffs have not demonstrated that they were treated differently from any others similarly

37

situated—that is, they have brought forth no evidence of instances in which parties sought and were granted a hearing on an NOPS/NIDP based on a failure to pay a civil penalty. Therefore, the Court finds that the Agency is entitled to summary judgment on the issue of whether the denial of a hearing on the NOPS/NIDPs violates the Plaintiffs' equal protection rights.

Therefore, the Court determines that the Agency is entitled to summary judgment with respect to all claims regarding (a) the denial of hearings and review in NOVAs 1412 and 30369; (b) the rights of violator Plaintiffs Rio San Marcos, Inc. and Rio Purificacion, Inc. to a hearing on their respective NOPS/NIDPs; and (c) the due process and equal protection claims of the violator Plaintiffs with respect to the NOPS/NIDPs. The non-violating Plaintiffs are entitled to summary judgment with respect to their claims that the Agency should have provided them with the opportunity for a hearing on the NOPS/NIDPs.

### B. The Agency Did Not Did Not Have to Pierce the Corporate Veil to Issue the NOPS/NIDPs, But It Did Have to Provide Notice and a Hearing to the Non-Violating Corporate Plaintiffs.

Next, Plaintiffs contest the Agency's decision to issue the NOPS/NIDPs for all of the corporate Plaintiffs, despite the fact that the underlying civil penalties were owed only by Plaintiff Rio Purificacion, Inc. for the August 1, 2003 NOPS/NIDP (Doc. No. 1, Ex. B), and Plaintiff Rio San Marcos, Inc. for the October 25, 2005 NOPS/NIDP (Doc. No. 1, Ex. D). They argue that the fact that all of their permits were sanctioned based upon the violations of other corporations that have Plaintiff Gonzalez as their director/officer/shareholder was arbitrary and capricious, as well as a violation of their due process and equal protection rights.

Whether or not the corporate veil must be pierced is an issue relevant to two of the Agency's decisions—first, its decision to issue the NOPS/NIDPs to all of the corporate Plaintiffs,

38

and second, its decisions with respect to the penalties assessed based on imputation of sister

corporation violations.  To the extent that the Plaintiffs contest the *issuance* of the NOPS/NIDPs

based on the theory that each plaintiff is a separate, unrelated corporate entity, the Court

withholds a finding.  The Court notes that during the progress of this case, Plaintiffs admitted

that Plaintiff Jorge Gonzalez is identified as the sole owner, director, and shareholder of each of

the Plaintiff corporations.  Nevertheless, there is no record that the Agency had these admissions

at the time it issued the NOPS/NIDPs.  Since the Agency should have held a hearing before

issuing the NOPS/NIDPs to the non-violating Plaintiffs, the Court finds that the Agency's

issuance of the NOPS/NIDPs to the non-violating Plaintiffs without such a hearing and

supporting evidence was counter to federal law and should be set aside.

Plaintiffs contend Plaintiff Gonzalez should not count as a permit holder for the purposes

of the Magnuson-Stevens Act or the federal regulations.  (*See* Doc. No. 43 at ¶ 6.19.)  As noted

earlier, the Magnuson-Stevens Act authorizes the Agency to impose permit sanctions in

situations where "any civil penalty . . . imposed on a vessel or owner or operator of a vessel or

any other person who has been issued or has applied for a permit under any marine resource law

enforced by the Secretary [of Commerce] has not been paid and is overdue."  16 U.S.C. §

1858(g)(1)(C).  Federal regulations provide that the Agency "may take action . . . to sanction or

deny a permit" for failure to pay a civil penalty assessed in accordance with the statute.  15

C.F.R. § 904.301(a).  These regulations also provide that

> A permit sanction may be imposed, or a permit denied, under this subpart with
> respect to the particular permit pertaining to the violation or nonpayment, and may
> also be applied to any NOAA permit held or sought by the permit holder or successor
> in interest to the permit, including permits for other activities or for other vessels.
> 15 C.F.R. § 904.301(b).

As noted above, "permit holder" is defined as "the holder of a permit or any agent or employee of the holder . . . ." 15 C.F.R. § 904.2.

The Agency, interpreting Plaintiff Gonzalez as a permit holder, concluded that other companies for which he served as the sole director/officer/shareholder could have their permits denied or revoked under the federal regulations.  This determination is not necessarily inconsistent with the regulation, which even provides as an example of its policy: "NOAA suspends Vessel A's fishing permit for nonpayment of a civil penalty pertaining to Vessel A. The owner of Vessel A buys Vessel B and applies for a permit for Vessel B to participate in the same or a different fishery. NOAA may withhold that permit until the sanction against Vessel A is lifted."  15 C.F.R. § 904.301(b)(1).

The Agency did not, however, inform the non-violating Plaintiff corporations that they were being sanctioned based on this policy, nor did it even address the NOPS/NIDPs to Plaintiff Gonzalez.  (*See* Doc. No. 1, Exs. B, D.)  Moreover, the corporate owners of the vessels identified in the NOPS/NIDPs, based upon the current administrative record, are separate corporations and so the application of the example cited above is tenuous at best without a hearing to determine whether the facts support application of the policy.

Plaintiffs suggest that the regulations conflict with the statute, or that the Agency's interpretation violates due process by punishing "independent" corporations.  The statute, however, provides the Agency with broad discretion to impose permit sanctions and Plaintiffs have not demonstrated any statutory text or legislative history contrary to the federal regulations or the Agency's interpretation.  It is designed to give the Agency latitude to prevent violators of

the Magnuson-Stevens Act (and related acts) from playing a corporate shell game. Moreover, as noted above, the statute and implementing regulations already impose procedural restrictions that should prevent the arbitrary sanctioning of unrelated vessels without proper notice and opportunity for a hearing. *See, e.g.*, 16 U.S.C. § 1858(g)(5); 15 C.F.R. §§ 904.304, 904.201.

Therefore, the Court concludes that the Agency's interpretation that it could ultimately sanction sister corporations based on their shared owner's failure to pay a civil penalty does not inherently conflict with the statute, federal regulations, or due process so long as the corporate/personal relationships and the sanctions are supported by the evidence adduced at a proper hearing. In this case, however, the Agency did not allow the non-violating sister corporations the opportunity for a hearing, it did not first inform the sister corporations that the basis for the sanction was their relationship to Plaintiff Gonzalez, and it did not allow them a chance to contest the allegations. The issuance of the NOPS/NIDPs to the non-violating Plaintiffs will therefore be set aside, and these matters are remanded to the Agency for further proceedings not inconsistent with this opinion.

> ### C. The Administrative Law Judges Correctly Excluded Evidence Offered by Plaintiffs Concerning Ability to Pay and Correctly Concluded that Plaintiffs Have the Ability to Pay their Civil Penalties.

When a person/entity has been found to violate the Magnuson-Stevens Act, his ability to pay the civil penalty is a factor that the Agency may consider when it determines the amount of the civil penalty, so long as the violator properly serves the information relating to his ability to pay thirty days before the administrative hearing. 16 U.S.C. § 1858(a). This statute, as the Administrative Law Judges noted in their Orders to Compel or Exclude, previously had stated that the Agency "shall take into account" the ability to pay factor, prompting a District Court to

remand for a new hearing and reassessment of a civil penalty because the administrative law

judge had not considered the respondent's ability to pay.  50027 AR Vol. 1, Ex. 12 at 4 (citing

*Diehl v. Franklin*, 826 F. Supp. 874 (D.N.J. 1993)); 43022 AR Vol. 1, Ex. 18 at 7 (also citing

*Diehl*).  After that decision, the statute was amended so that the Agency would no longer be

required to consider the violator's ability to pay.  50027 AR Vol. 1, Ex. 12 at 4–5; 43022 AR

Vol. 1, Ex. 18 at 7–8.

The federal regulations that implement the Magnuson-Stevens Act explain the procedures

that a violator must follow if he wishes that the Agency consider his ability to pay.  Specifically,

such a respondent:

> has the burden of proving such inability [to pay the civil penalty] by providing
> verifiable, complete, and accurate financial information to NOAA.  NOAA will not
> consider a respondent's inability to pay unless the respondent, upon request, submits
> such financial information as Agency counsel determines is adequate to evaluate the
> respondent's financial condition. Depending on the circumstances of the case, Agency
> counsel may require the respondent to complete a financial information request form,
> answer written interrogatories, or submit independent verification of his or her
> financial information. If the respondent does not submit the requested financial
> information, he or she will be presumed to have the ability to pay the civil penalty.
> 15 C.F.R. § 904.108(c).

In addition, relevant financial information is defined to include "the value of respondent's cash

and liquid assets; ability to borrow; net worth; liabilities; income tax returns; past, present, and

future income; prior and anticipated profits; expected cash flow; and the respondent's ability to

pay in installments over time."  15 C.F.R. § 904.108(d).  Based on the statutory history and the

applicable federal regulations, the Administrative Law Judges concluded in their respective

Orders to Compel or Exclude that the Plaintiffs would have to submit the information requested

by Agency counsel within the statutory deadline, or else they would be presumed to have the

ability to pay.  50027 AR Vol. 1, Ex. 12; 43022 AR Vol. 1, Ex. 18.

Plaintiffs contend that the Administrative Law Judges in NOVAs 50027 and 43022 should have considered the tax returns submitted by the Plaintiffs in an effort to establish their inability to pay the proposed penalties.  (*See, e.g.*, Doc. No. 35 at 4–6.)  It is undisputed that the Agency's counsel received the Plaintiffs' submission of the tax returns.  It is also undisputed that the Agency notified Plaintiff Rio San Marcos, Inc. and Plaintiff Gonzalez Fisheries, Inc., in each of their respective cases to inform them that the tax returns were not sufficient information and that they would need to submit additional financial information.  Neither of the Plaintiffs submitted the additional information requested.  Rather, Plaintiffs rest solely on the discretionary language of the statute that affords the Agency the ability, but not the obligation, to consider a violator's ability to pay and to consider "such other matters as justice may require."  16 U.S.C. §§ 1858(a), (g)(2)(B).

The record before the Court demonstrates that the two Respondent-Plaintiffs here had more than ample opportunity to comply with the requirements of federal law, the multiple requests by Agency counsel, and the admonishments of the Administrative Law Judges in their Orders to Compel or Exclude.  It further demonstrates that the Plaintiffs' interpretation of the Magnuson-Stevens Act runs counter to clear congressional intent.  Simply put, Plaintiffs were required by statute and federal regulation to provide more than a select number of tax returns if they wanted the Agency to consider their inability to pay the civil penalties charged.  Plaintiffs did not provide the requested information.  Therefore, the tax returns were properly excluded by the Administrative Law Judge because they were insufficient to satisfy Plaintiffs' burden of producing financial information that would allow the Agency "to properly evaluate a

43

respondent's financial condition." 43022 AR Vol. 2, Ex. 29 at 4; *see also* 50027 AR Vol. 4, Ex. 38 at 4–5.

Moreover, because Plaintiffs failed to follow the statutory and regulatory requirements for submitting financial information, the Agency did not err by concluding that the Plaintiffs have the ability to pay the penalties assessed. *See* 15 C.F.R. § 904.108(c) (" . . . If the respondent does not submit the requested financial information, he or she will be presumed to have the ability to pay the civil penalty.") The Court therefore finds that the Agency is entitled to summary judgment on all of Plaintiffs' claims that their ability to pay was not properly considered in the ultimate outcomes of NOVAs 50027 and 43022.

### D.  General and Constitutional Challenges to Agency Action

#### 1.  Objectivity and Conclusions in NOVAs 50027 and 43022

Plaintiffs generally contest the hearings held in NOVAs 50027 and 43022, alleging that the hearings were not objective and did not comply with the requirements of due process. (*See, e.g.*, Doc. No. 35 at 14–15.) The only evidence they offer is that the Agency excluded certain evidence regarding their ability to pay the civil penalties and an assertion that the Agency itself had issued a "be on the lookout" (or "BOLO") bulletin that was not properly docketed in the Agency record. (Doc. No. 43 at ¶¶ 2.1, 6.28.) They also contend that the agency's refusal to consider constitutionality challenges indicates the Agency was not objective. (Doc. No. 35 at 14.)

With respect to the first concern, the Court has already explained why the Administrative Law Judges properly excluded the Plaintiffs' selective offer of tax returns as irrelevant due to the Plaintiffs' own refusals to provide all of the appropriate financial information.  With respect to

the second concern, the Court finds that even if it is true that there is a missing BOLO bulletin that was not filed, it is not enough to overcome the overwhelming facts demonstrating that the Agency's decisions are supported by substantial evidence. With respect to the third concern, the Agency was correct: it did not possess the authority to rule on constitutional challenges, and its refusal to consider those challenges was not out of a subjective disregard for Plaintiffs, but because it lacks the authority to do so. 15 C.F.R. § 904.200 ("The [Administrative Law] Judge has no authority to rule on constitutional issues or challenges to the validity of regulations promulgated by the Agency or statutes administered by NOAA.").

Plaintiffs do not dispute the record evidence showing that their vessels were found in violation of federal shrimping laws, nor did they offer sufficient evidence to demonstrate a financial inability to pay the civil penalties assessed. The Court therefore finds in favor of the Agency with respect to the general arbitrary and capricious, *cf.* 5 U.S.C. § 706(2)(A), challenges to the Agency's hearings and decisions with respect to NOVAs 50027 and 43022.

Insofar as the Plaintiffs contest any of the factual findings by the Administrative Law Judges in NOVAs 50027 and 43022 regarding the actual violations, the Court hereby finds that the Agency is entitled to summary judgment because the Administrative Law Judges' findings are supported by substantial evidence, *cf.* 5 U.S.C. § 706(2)(E), and because Plaintiffs have not pointed to any record evidence to the contrary.[8]

---

[8] The Court notes that the only underlying factual claim the Plaintiffs raise in their Reply Memorandum is the issue of whether or not the logbook containing F/V RIO SAN MARCOS's coordinates was a "hang-book logbook" or the actual logbook charting the vessel's fishing locations. (Doc. No. 43 at 15–16.) During the hearing, the Administrative Law Judge considered the first-hand testimony of the Game Wardens who boarded the F/V RIO SAN MARCOS and who questioned the captain on board, and in his initial decision, he determined that their testimony was more reliable than that of Plaintiff Gonzalez, who was neither on the

To the extent that Plaintiffs assert the penalties assessed in NOVAs 50027 and 43022 bear no rational relationship to the violations, (*see* Doc. No. 35 at 16), the Court disagrees.[9]  The Agency has shown the penalties assessed to be within the guidelines for its Civil Penalty Schedule.  *See* 43022 AR Vol. 3-36, Ex. 10 (Copy of Penalty Schedule).  This Penalty Schedule exists to facilitate "assessment of individualized penalties to fit the specific facts of a case" and to establish "relative uniformity in penalties assessed for similar violations nationwide."  *Id.*

Moreover, the Administrative Law Judges in both NOVAs 50027 and 43022 properly took into account the factors listed by federal regulation: "the nature, circumstances, extent, and gravity of the alleged violation; the respondent's degree of culpability, any history of prior offenses, and ability to pay; and such other matters as justice may require."  43022 AR Vol. 2, Ex. 29 at 13 (citing 15 C.F.R. § 904.108(a)); 50027 AR Vol. 4, Ex. 38 at 14–15.  Given that the owner of Rio San Marcos, Inc. had a recent prior violation and an outstanding unpaid penalty for NOVA 1412, the Agency was not irrational in concluding that the respondent Plaintiff had a high degree of culpability and should have been assessed a penalty at the high end of the Penalty Schedule.  *See* 43022 AR Vol. 2, Ex. 29 at 13–15.  The Court is cognizant of the concern that Rio San Marcos has because the Administrative Law Judge considered the violation history of "all corporations owned and controlled by Jorge Gonzalez," including NOVA 1412 and the

---

boat nor had any other corroboration for his claim that the logbooks were really "hang-books."  43022 AR Vol. 2, Ex. 29 at 8–10.  Plaintiffs have not pointed to any evidence sufficient to contradict the Administrative Law Judge's determination and the Court therefore defers to and affirms the Administrative Law Judge's findings.

[9] Insofar as Plaintiffs' argument rests on their insistence that the selected tax returns they submitted should have been considered, the Court has already disposed of this claim *supra* and at this point in the opinion only considers the argument that the Agency assigned penalties that are not rationally related to the underlying acts for which they were assessed.

August 1, 2003 NOPS/NIDP (which was based on nonpayment of the fine assessed in NOVA 1412), both of which did not involve wrongdoing by Rio San Marcos, Inc.  *See id.* at 13–14. These violations, however, do shed light on the culpability of Rio San Marcos's owner, Jorge Gonzalez, and would therefore be relevant factors for the Agency to consider.  *See* 15 C.F.R. § 904.108(a); (*see also* July 2, 2004 Letter from NOAA Office of Assistant General Counsel for Enforcement & Litigation to Rep. Barney Frank, Doc. No. 42-5.)  The Court therefore finds that the penalty decision of the Administrative Law Judge is supported by substantial evidence and should not be set aside.

   In the case of Gonzalez Fisheries, Inc., the Administrative Law Judge recounted the long history of violations by the its sister corporations, and also pointed to a written warning that had been issued to the operator of its vessel (the F/V AZTECA).  50027 AR Vol. 4, Ex. 38 at 17–18. This Court has determined that the NOPS/NIDPs should not have been issued against Gonzalez Fisheries without a hearing, and it follows that the August 1, 2003 NOPS/NIDP should not contribute to increasing the amount of a penalty assessed against Gonzalez Fisheries. Nevertheless, the Court still concludes that the penalty assessment issued bore a rational relationship to the violation that was proved in NOVA 50027.  That is, given the knowledge that Gonzalez Fisheries, Inc. should have possessed by virtue of the fact that its registered agent had a long history of violations and the fact that its vessel had an outstanding warning (which also put Gonzalez Fisheries on notice that the warning itself "may be used to justify a more severe penalty for future violations"), the Court concludes that the $30,000 civil penalty assessed against Gonzalez Fisheries for fishing without a valid permit did bear a rational relationship to its violation of the Magnuson-Stevens Act.  *See id.* at 14–18.  The Court therefore finds in favor of

47

the Defendant with respect to all challenges regarding the propriety of the hearings held in

NOVAs 50027 and 43022, as well as the ultimate conclusions of the Administrative Law Judges

in NOVAs 50027 and 43022, including the rational relationship between the monetary penalties

assessed and their underlying violations.

### 2. Separation of Powers

Plaintiffs also argue that the Magnuson-Stevens Act violates principles of separation of

powers. (Doc. No. 35 at 12–13.) Their argument claims that the Act violates the non-delegation

doctrine by allowing the Agency, an executive branch of government, to perform judicial

functions, allegedly without judicial review or due process. (*Id.*) They further assert that the Act

amounts to the Agency's "delegation of the administrative process to itself," which "removes

objectivity" and was a "substantial threat" to the Plaintiffs. (*Id.* (referring to *Grisham v. United

States*, 103 F.3d 24, 27 (5th Cir. 1997)("[A] constitutional delegation of adjudicative functions to

an administrative agency is not objectionable unless it creates a 'substantial threat to the

separation of powers.'")).)

Plaintiffs' argument overlooks the explicit provisions in the Magnuson-Stevens Act that

provide for judicial review of penalties and mandate the opportunity for a hearing before

sanctions may be imposed.  16 U.S.C. §§ 1858(b),(g)(5).  The Court therefore finds that the

Plaintiffs are not entitled to summary judgement on this claim, and that the Agency is entitled to

summary judgment.

### 3. Permit Handling

Throughout their Motion for Summary Judgment and Reply Memorandum, Plaintiffs

contest the Agency's handling of its permit applications.  Plaintiffs argue that they had submitted

permit applications and that the rejection of their permit applications was pretextual in nature

based upon the violation history of sister corporations. The Agency has argued that Plaintiffs

never submitted complete applications, and has challenged Plaintiffs' assertion that they did

submit complete applications in the form of affidavits from a records manager at the Agency who

performed searches for Plaintiffs' applications and turned up only five incomplete applications

that were returned to the Plaintiffs and never re-submitted. 43022 AR Vol. 3-36 Exs. 8, 59

(Affidavits of Cheryl Franzen). Plaintiffs' only rebuttal evidence is the affidavit of Raul Garcia,

who was previously employed by all of the corporate Plaintiffs, and who states that he "would

have" signed and submitted the copies of nine applications attached to his affidavit. (Doc. No.

43, Ex. A at ¶ 3.) Mr. Garcia further states that he "do[es] not recall specifically receiving any

notification of rejection" from the Agency "after submission of the permit applications." (Doc.

No. 43, Ex. A at ¶ 6.)

   The Court finds that the Plaintiffs have not met their burden of showing specific facts to

demonstrate that there is any issue as to whether they in fact fully and completely applied for

permits. As the Agency has argued, the Plaintiffs never submitted copies of completed

applications, proof of payment, certified mail receipts, or any other evidence to prove that they

ever possessed or properly applied for permits.

   Moreover, the Agency has demonstrated that there is no record of the corporate Plaintiffs

having submitted complete applications, and has further demonstrated that the copies of

applications that the Plaintiffs have filed with this Court are lacking in critical

information—signatures, corporate shareholder/officer/director information, and/or annual

business reports. (*See* Doc. No. 42 at 13–16 (citing 50 C.F.R. § 622.4(e)(2))); *see also* 50 C.F.R.

§ 622.4 (b)(3)(ii) (detailing application requirements); 43022 AR Vo. 3-36, Ex. 8 (Franzen

Affidavit and copy of permit application and instructions).  Therefore, the Court finds, with the

exceptions noted above, that the Agency is entitled to summary judgment with respect to all of

Plaintiffs' claims that its permit applications were mishandled or improperly rejected.[10]

### 4.  Eighth Amendment Claims

The Agency is also entitled to summary judgment on all of the Plaintiffs' Eighth

Amendment Claims that Agency imposed excessive fines or violated the double jeopardy clause

of the Eighth Amendment.  First, both of the fines assessed in NOVAs 50027 and 43022 are

within the limits authorized by Congress in the Magnuson-Stevens Act, and are therefore not

"excessive."  *See* 16 U.S.C. § 1858(a); *Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 210 (5th

Cir. 2000).  Additionally, even though the fines are at the high end of the Agency's penalty

schedule, they still fall within the limits of a first-time violation.  *See* 50027 AR Vol. 5-44, Ex.

49 (Magnuson-Stevens Act Penalty Schedule); 43022 AR Vol. 3-36, Ex. 10 (same document).

For this reason, the Court need not consider whether or not the Agency could have imputed the

violations of sister corporations as the individual violator's "prior history of violations."  The

---

[10] The Court notes that this finding pertains only to all claims regarding handling of the permits to the extent that such claims are independent from the claims relating to the issuance of the NOPS/NIDPs discussed above.  Thus, although the Court grants summary judgment to the Agency on the issue of permit handling or rejection on grounds *other* than the NOPS/NIDPs, its findings above would still impact permit handling related to the NOPS/NIDPs.  *See* §§ VII.A.2.(c), (f)–(g), *supra*.

The ultimate effect of this Court's opinion is a remand for further proceedings on the NOPS/NIDPs, which could affect applications that have not been completely filed.  While at first blush this may seem unusual, the result is necessitated by the nature of the NOPS/NIDPs which apply to not only permits in existence, but also to any applications in process (as is claimed by Plaintiffs) or future application that the Plaintiffs may eventually file.  This is true regardless of the validity of the Agency's position that at least five of the applications had been abandoned, because the Agency could still apply the existing NOPS/NIDPs to any future permit application.

Double Jeopardy clause is not implicated by the civil penalties, permit sanctions, or shrimp seizures because none of the actions constitute "punishment" within the meaning of the double jeopardy clause.  *See United States v. Halper*, 490 U.S. 435, 447 (1989).

Therefore, the Court finds that the Agency is entitled to summary judgment, and that it has not violated either the excessive fine or the Double Jeopardy clauses of the Constitution.

### 5.  Fifth Amendment Takings

With respect to Plaintiffs' claims that they were entitled to possess the federal shrimping permits and therefore suffered takings due to the Agency's actions, the Court finds that they are not entitled to summary judgment, and the Agency is entitled to summary judgment.  For the reasons discussed above—that Plaintiffs have not demonstrated they actually possessed federal shrimping permits or submitted complete applications for such permits—Plaintiffs have not demonstrated that they held a property interest subject to a taking under the Fifth Amendment. Moreover, even if Plaintiffs did hold permits, the permits would not have the "crucial indicia of a property right" necessary to invoke the takings doctrine.  *See Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003) (finding that as a threshold matter, a takings claimant must demonstrate the existence of a legally cognizable property interest).  That is, Plaintiffs have not cited to any authority or offered any evidence that they would have been able to assign, sell, or transfer their permits, or that their permit would have conferred exclusive fishing privileges. *Cf. American Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1374 (Fed. Cir. 2004). Therefore, the Court finds that the Agency is entitled to summary judgment because Plaintiffs have failed to demonstrate a property interest with respect to the federal shrimping permits.

With respect to Plaintiffs' claims that the shrimp seizures, the civil penalties assessed in

NOVAs 50027 and 43022, and the NOPS/NIDPs constituted takings, the Court agrees with the

Agency that it lacks subject matter jurisdiction on these claims because the United States Court

of Federal Claims has exclusive jurisdiction over these matters.  (*See* Doc. No. 42 at 40 (citing 28

U.S.C. § 1491(a); *Wilkerson v. United States*, 67 F.3d 112 (5th Cir. 1995)).  Therefore, it finds

that the Agency is entitled to summary judgment on all of the takings claims.

To the extent that Plaintiffs seek relief for the shrimp seizure on the ground that the

seizure represents a forfeiture, the Court finds that the Agency has sufficiently demonstrated such

claim to be unripe because the judicial proceedings in Case No. 50027 are not yet final.  (*See*

Doc. No. 42 at 38–39 (citing 18 U.S.C. § 983(a)(2)(B)).)  The Court also finds that the

Administrative Law Judge in NOVA 50027 properly excluded any forfeiture claims from the

administrative hearing because such claims must be brought in federal district court.  (*Id.* at 39

(citing 16 U.S.C. § 1860(b)).)

### 6.  Right to a Jury Trial

Plaintiffs have also asserted that they were deprived of their constitutional right to a jury

trial on the assessed violations and permit sanctions.  (Doc. No. 34-2 at ¶ 13.0.)  This claim lacks

merit.  Through the Magnuson-Stevens Act, Congress provided that administrative proceedings

would be available for parties charged with violations and/or permit sanctions.  *See* 16 U.S.C. §

1858.  The Supreme Court has held that in statutory schemes specifying administrative

proceedings as the mechanism for litigating public rights , the Seventh Amendment does not

guarantee a right to a jury trial.  *Atlas Roofing Co., Inc. v. Occupational Safety and Health

Review Com'n*, 430 U.S. 442 (1977).  As in the Occupational Safety and Health Act, where the

government could seek civil penalties from employers violating the law by maintaining unsafe

working conditions, Congress created through the Magnuson-Stevens Act a mechanism by which the government could seek civil penalties from fishers violating the law by using unsafe fishing methods or fishing without valid permits.  The Magnuson-Stevens Act does not provide for jury trials to litigate public rights, and the Seventh Amendment does not guarantee them to Plaintiffs. Therefore, the Court finds that the Plaintiffs' constitutional claims to a jury trial are without merit and should be dismissed.

### 7.  Remaining Asserted Claims

The Court hereby finds that with respect to any of the remaining asserted claims not specifically addressed above—*e.g.*, general due process, equal protection, and civil rights claims—that the Plaintiffs have failed state a claim upon which relief can be granted because the Plaintiffs have not pleaded specific facts or law that would demonstrate they are entitled to relief. Despite being afforded the opportunity to fully develop their claims in summary judgment motions, the Plaintiffs have not done so, and such claims are therefore dismissed with prejudice.


## VIII.  CONCLUSION

For the foregoing reasons, it is hereby ordered:

(1)    Plaintiffs' Motion for Summary Judgment (Doc. No. 35) is GRANTED IN PART and DENIED IN PART as follows:

    (a)    All Agency decisions denying the right to a hearing on NOPS/NIDPs issued to the non-violating corporate Plaintiffs, including but not limited to the Agency's May 31, 2006 Order, are REVERSED only with respect to the denial of the right to a hearing on the NOPS/NIDPs and this action is REMANDED to the Agency to

provide the non-violating Plaintiffs with the opportunity for a hearing on the

NOPS/NIDPs such that:

> (i) Plaintiffs Leon Trawlers, Inc., Ojos Negros, Inc., El Grande Trawlers,
>
> Inc., El Colonel, Inc., Chubasco Inc., Ochos Hijos, Inc, Gonzalez
>
> Fisheries, Inc., and Rio San Marcos, Inc. are entitled to a hearing on the
>
> August 1, 2003 NOPS/NIDP; and
>
> (ii) Plaintiffs Leon Trawlers, Inc., Ojos Negros, Inc., El Grande Trawlers,
>
> Inc., El Colonel, Inc., Chubasco Inc., Ochos Hijos, Inc, Gonzalez
>
> Fisheries, Inc., and Rio Purificacion, Inc. are entitled to a hearing on the
>
> October 25, 2005 NOPS/NIDP;

(b) The NOPS/NIDP issued on August 1, 2003 is VACATED as to all Plaintiffs

except Rio Purificacion, Inc., and the matter is REMANDED to the Agency for

further proceedings not inconsistent with this opinion;

(c) The NOPS/NIDP issued on October 25, 2005 is VACATED as to all Plaintiffs

except Rio San Marcos, Inc., and the matter is REMANDED to the Agency for

further proceedings not inconsistent with this opinion; and

(d) All of Plaintiffs' remaining claims for summary judgment are DENIED.[11]

(2) With the exception of the relief granted above in ¶ 1, Defendant's Motion for Summary

Judgment (Doc. No. 42) IS GRANTED IN PART and DENIED IN PART. It is granted as

---

[11] The relief granted to Plaintiffs by the Court does not cure any existing defects in some or all of the permit applications by the Plaintiffs, nor does such relief cure any actual failure by one or all of the Plaintiffs to submit a complete permit application. Stated another way, by ordering a hearing on the NOPS/NIDPs for the non-violating Plaintiffs, this Court's action should not be interpreted as taking any position on any yet-to-be filed application.

to all claims except for those of the non-violating Plaintiffs with respect to the

NOPS/NIDPs, and it is denied as to those claims.


SIGNED this 15th day of March, 2010.

_____
Andrew S. Hanen
United States District Judge

APPENDIX:
Timeline of Key Events[12]

Nov. 10, 2000          Plaintiff Rio Purificacion, Inc.'s vessel (F/V RIO CONCHOS)
                       found fishing without a turtle excluder device and without a
                       bycatch reduction device.  (NOVA 1412)

Sept. 12, 2002         NOVA 1412 Issued against Rio Purificacion, Inc.

Dec. 5, 2002           Federal Law requires Gulf shrimping boats to have on board a
                       valid federal commercial vessel permit

Dec. 15, 2002          Date on which the following Plaintiffs claim to have applied for
                       fishing permits:
                       El Colonel, Inc. — F/V EL MISTER
                       El Grande Trawlers, Inc. — F/V EL GRANDE
                       Leon Trawlers, Inc. — F/V LEON
                       Ojos Negros, Inc. — F/V MARIA BONITA
                       Rio San Marcos, Inc. — F/V RIO SAN MARCOS
                       Gonzalez Fisheries, Inc. — F/V AZTECA
                       Ocho Hijos, Inc. — F/V CONQUISTADOR

Feb. 11–12, 2003       NOVA 1412 Served on Raul Garcia

Mar. 31, 2003          Agency receives applications for the following Plaintiffs and
                       vessels:
                       El Colonel, Inc. — F/V EL MISTER
                       El Grande Trawlers, Inc. — F/V EL GRANDE
                       Leon Trawlers, Inc. — F/V LEON
                       Ojos Negros, Inc. — F/V MARIA BONITA
                       Rio San Marcos, Inc. — F/V RIO SAN MARCOS

Apr. 11, 2003          Agency returns all applications for owner date of birth and annual
                       business report

Jun. 4, 2003           Date on which the following Plaintiffs claim to have applied for
                       fishing permits:
                       Chubasco, Inc. — F/V CHUBASCO
                       Rio Conchos, Inc. — F/V RIO CONCHOS

_____

[12] The descriptions contained in this timeline should not be considered findings of fact or
conclusions of law, but are merely added to help the reader of the main opinion follow the
sequence of events.

| | |
|---|---|
| Aug. 1, 2003 | NOPS/NIDP Issued against all Corporate Plaintiffs for Rio Purificacion, Inc.'s failure to pay civil penalty in NOVA 1412 |
| Oct. 17, 2003 | Plaintiff Rio San Marcos, Inc.'s vessel (F/V RIO SAN MARCOS) found fishing without a permit.  (NOVA 30369) |
| Mar. 20, 2004 | Plaintiff Rio San Marcos, Inc.'s vessel (F/V RIO SAN MARCOS) found fishing without a permit.  (NOVA 43022) |
| Apr. 22, 2004 | NOVA 30369 Issued Against Rio San Marcos, Inc. |
| Sept. 15, 2004 | NOVA 30369 Served on Raul Garcia |
| Feb. 3, 2005 | Plaintiff Gonzalez Fisheries, Inc.'s vessel (F/V AZTECA) found fishing without a permit (NOVA 50027) |
| Mar. 22, 2005 | NOVA 50027 Issued Against Gonzalez Fisheries, Inc. |
| Apr. 1, 2005 | NOVA 50027 Received by Raul Garcia |
| May 2, 2005 | Plaintiff Gonzalez Fisheries, Inc. files request for hearing on NOVA 50027. |
| Jun. 24, 2005 | NOVA 43022 Issued Against Rio San Marcos, Inc. |
| Jun. 29, 2005 | NOVA 43022 Received by Raul Garcia |
| Jun. 29, 2005 | Plaintiffs Gonzalez Fisheries, Inc.; Rio San Marcos, Inc.; and Rio Purificacion, Inc. file request for hearings on NOVAs 1412, 30369, 50027, 43022 |
| Oct. 25, 2005 | NOPS/NIDP Issued against all Corporate Plaintiffs for Rio San Marcos, Inc.'s failure to pay civil penalty in NOVA 30369 |
| Mar. 21, 2006 | Hearing on NOVA 50027 held |
| Apr. 18, 2006 | ALJ grants Agency's Motion Opposing Hearing Requests on NOVAs 1412 and 30369 as time-barred |
| May 10, 2006 | Plaintiffs Gonzalez Fisheries, Inc.; Rio San Marcos, Inc.; and Rio Purificacion, Inc. file Request for Reconsideration on the denial of hearings on NOVA 1412 and 30369.  Plaintiffs Gonzalez Fisheries, Rio SM, and Rio Purificacion also file Request for Hearing on the |

"Permit Sanctions" (NOPS/NIDP)

May 31, 2006      ALJ denies Plaintiffs Gonzalez Fisheries, Inc.; Rio San Marcos, Inc.; and Rio Purificacion, Inc.'s request for reconsideration, and for hearing on the NOPS/NIDP.  ALJ determines that issuing the NOPS/NIDPs as part of civil penalty collection process is appropriate under 15 C.F.R. § 904.301(a)(2) and that the Respondents do not have a right to a hearing on the NOPS/NIDPs because they had a previous opportunity to participate as a party in a hearing on the underlying NOVAs.

Aug. 15, 2006      Cheryl Franzen performs record search, showing that no permits were ever issued to:
El Colonel, Inc. — F/V EL MISTER
El Grande Trawlers, Inc. — F/V EL MISTER
Leon Trawlers, Inc. — F/V LEON
Ojos Negros, Inc. — F/V MARIA BONITA
Rio San Marcos, Inc. — F/V RIO SAN MARCOS
Search also shows that the following vessels never applied for a permit:
Gonzalez Fisheries, Inc. — F/V AZTECA
Ocho Hijos, Inc. — F/V CONQUISTADOR
Chubasco, Inc. — F/V CHUBASCO
Rio Conchos, Inc. — F/V RIO CONCHOS

Aug. 22, 2006      Hearing on NOVA 43022 held

Dec. 5, 2006      ALJ issues Initial Decision finding Plaintiff Gonzalez Fisheries, Inc. liable for violating the Magnuson-Stevens Act and that NOVA 50027 was proved by the Agency, and assesses $30,000 penalty.

May 1, 2007      Secretary of NOAA denies request for discretionary review on NOVA 50027

Feb. 12, 2008      ALJ issues Initial Decision finding Plaintiff Rio San Marcos, Inc. liable for violating the Magnuson-Stevens Act and that NOVA 43022 was proved by the Agency, and assesses $30,000 penalty

July 10, 2008      Secretary of NOAA denies request for discretionary review on NOVA 43022